IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF NORTH CAROLINA
STATESVILLE DIVISION
5:05CV273-03-MU

| | | |
|---|---|---|
| JAMES FRANKLIN McCLELLAND, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | **O R D E R** |
| | ) | |
| JOSEPH HARRIS, MIKEAL BUSH, | ) | |
| | ) | |
| Defendants. | ) | |

**THIS MATTER** comes before the Court on Plaintiff's Complaint pursuant to 42 U.S.C. § 1983, filed November 9, 2005 (Document No. 4); Plaintiff's Motion for Summary Judgment, filed January 17, 2006 (Document No. 15); Defendants' Motion for Summary Judgment, filed February 17, 2006 (Document No. 21); Plaintiff's Memorandum in Opposition to Defendants' Motion for Summary Judgment (Document No. 23); and Plaintiff's Addendum to his Memorandum in Opposition (Document No. 28.)

Plaintiff alleges that on July 13, 2004 he was brutally assaulted by a fellow inmate at the Alexander Correctional Center; that such attack occurred despite the fact that Defendants knew or should have known that the inmate attacker was planning to assault the Plaintiff; and that such attack occurred in the presence of the Defendants who failed to take any action to prevent the attack or to stop it once it got underway. Plaintiff alleges that Defendants were deliberately indifferent to the risk of harm to which he was exposed, and to his right to be protected from violence.

**I. ANALYSIS**

To be sure, a prison has some duty to protect prisoners from violence. The Eighth

1

Amendment imposes a duty on prison officials "to protect prisoners from violence at the hands of other prisoners." Farmer v. Brennan, 511 U.S. 825, 833 (1994). "Being violently assaulted in prison is simply not 'part of the penalty that criminal offenders pay for their offenses against society.'" Id. at 824, citing Rhodes v. Chapman, 452 U.S. 337, 347 (1981). Indeed, "[a] prison official's deliberate indifference to a substantial risk of serious harm to an inmate violates the Eighth Amendment." Id. at 829; see also, Helling v. McKinny, 509 U.S. 25 (1993); Wilson v. Seiter, 501 U.S. 294 (1991); Estelle v. Gamble, 429 U.S. 97 (1976). However, "[i]t is not every injury suffered by one prisoner at the hands of another that translates into constitutional liability for prison officials responsible for the victim's safety." Farmer v. Brennan, 511 U.S. 825, 834 (1994).

To establish a claim under § 1983 for failure to protect from violence, an inmate must show; (1) that the victim was in a situation posing a substantial risk of serious harm and (2) that the prison official had a "sufficiently culpable state of mind." Farmer, 511 U.S. at 834. That state of mind is one of "deliberate indifference to inmate health or safety." Id. Stated another way, the prison official must know of and disregard an excessive risk to an inmates safety and must be aware of facts from which an inference could be drawn that a substantial risk of serious harm exists and must draw that inference. Farmer, at 838. However, prison officials who knew of a substantial risk of harm will not be held liable if they responded reasonably to the risk, even if the harm was not averted. "Whether one puts it in terms of duty or deliberate indifference, prison officials who act reasonably cannot be found liable under the Cruel and Unusual Punishments Clause." Id. at 844.

Plaintiff contends that on the day of the attack, inmate Ron Johnson came into the television area and announced that he wanted to watch the animal station. Plaintiff stated that he and the others had been watching a movie for more than an hour and that they wanted to finish watching the movie.

Inmate Johnson then picked up the remote control and changed the channel. Inmate Johnson asked Plaintiff what he was going to do about the fact that he changed the channel. Plaintiff told inmate Johnson that he was not going to fight with him over the television. Inmate Ron Johnson then made threats to Plaintiff regarding what he would do to Plaintiff when the correctional officers exited the wing. At the time inmate Johnson made the threat, Defendant Harris walked right in front of the Plaintiff and inmate Johnson and according to Plaintiff, heard the threat made by inmate Johnson. Shortly after inmate Johnson made the threat, Plaintiff left the television area to put away his personal items in his cell. Plaintiff then went to another inmate's cell to borrow some coffee. While at the other inmate's cell, inmate Johnson came up behind Plaintiff and began assaulting him. Plaintiff contends that Defendants stood nearby "with their hand on their mace can" and did nothing to stop the assault.

Applying the above legal principles to the facts of the case, Plaintiff's claim must fail. First, Plaintiff has not established that Defendant Bush was aware of the threat made by inmate Johnson to Plaintiff. Therefore, Plaintiff has not established that Officer Bush had knowledge that inmate Johnson presented a substantial risk of specific harm to him.

Next, although Plaintiff specifically claims that Defendant Harris "was walking in front of the two of us" when inmate Johnson made the threat and "should have intervened to stop the further action carried out by Ron Johnson," this allegation is not enough to infer that Officer Harris knew of and disregarded an excessive risk to an inmates safety. Plaintiff did not make any specific allegation as to what inmate Johnson would do to Plaintiff. Furthermore the "threat" was made during an argument over the television station, which the Court ventures to guess is not an uncommon occurrence. There is no allegation that there was any known animosity or history of

violence between Plaintiff and inmate Johnson such that the Defendants should have known that inmate Johnson would carry out his general threat. Moreover, Plaintiff alleges that inmate Johnson threatened to do things to him when the officers "exit the wing." Plaintiff's Complaint makes clear that the Defendants were still on the wing when the assault occurred. Taking the Plaintiff version of the facts as true, Plaintiff has failed to establish that Defendant Bush had any knowledge of the threat against Plaintiff and while Defendant Harris may have heard the threat, Plaintiff has not established that Defendant Bush knew of and disregarded an excessive risk to Plaintiff's safety.

Next, Plaintiff contends that defendants stood by and did nothing while inmate Johnson was assaulting Plaintiff. Plaintiff contends that the assault did not come to an end until an officer in the control station noticed the attack, called a code and assisting officers came to stop the attack.

Defendant Bush contends that after being on the unit only five minutes he heard a loud noise and Officer Harris yelling "fight." He radioed a "10-40" (fight involving inmates) and saw inmate Johnson attacking Plaintiff. Officer Bush looked around to see if any other inmates were involved and then yelled "stop" and blew his whistle and ordered other inmates to lock-up. Officer Bush then took a step toward the scene, noticed inmate Johnson look as if he was going to attack Plaintiff again and unsnapped his pepper spray case. Inmate Johnson then complied with Officer Bush' order to "stop." Officer Bush then went to Plaintiff who was by then seated in an upright position and checked his head and upper body for any uncontrolled bleeding. Officer Bush observed no uncontrolled bleeding, but did see bruises and cuts to Plaintiff's head. Officer Bush stayed with Plaintiff until the nurse arrived. (See Bush affidavit, attached to Defendants' Motion for Summary Judgment.)

Officer Harris stated that be became aware of a fight on the unit and called to Officer Bush

to call in a code. When Officer Harris observed Plaintiff on the floor bleeding and inmate Johnson standing close by, he ordered inmate Johnson back to his cell and inmate Johnson complied. Sergeant Richards then arrived on the scene and took charge of the incident. Officer Harris observed Officer Bush checking Plaintiff for injuries. (See Harris affidavit, attached to Defendants' Motion for Summary Judgment.) Both Defendants stated that they were not aware that inmate Johnson presented a risk of assault or violence to Plaintiff and did not know that a problem existed between the two inmates until they witnessed the men fighting. (See Bush and Harris Affidavits.)

Plaintiff attached several affidavits to his Complaint from witnesses to the assault. The Court has considered Plaintiff's allegation that Defendants failed to act when inmate Johnson was attacking Plaintiff and concludes that Plaintiff's allegation is not consistent with the affidavits of Plaintiff's witnesses. For example, Jovar Ross stated that Defendants yelled to "stop" when they observed inmate Johnson assaulting Plaintiff. Darryl Waller observed the Defendants come to the bottom of the stair way and when it did not look like inmate Johnson was going to stop, he heard defendants blowing their whistles. Levi Adam stated that Defendants did nothing, not even put their hands on their mace, however, Plaintiff specifically contends that the Defendants "stood there with their hand on their "mace can."

From the affidavits of Plaintiff's witnesses and even from Plaintiff's Complaint, it seems clear that the Defendants reacted to the assault on the Plaintiff. At a minimum, according to Plaintiff, they stood ready to use their mace. According to Plaintiff's witnesses, they directed inmate Johnson to "stop," and blew their whistles, presumably to signal the need for more help. While, they may not have acted in a manner or even as quickly as Plaintiff would have liked, they clearly reacted to the assault. The fact that Defendants did not act quickly enough, at least according to Plaintiff,

5

does not expose them to constitutional liability. As stated above, prison officials who knew of a substantial risk of harm will not be held liable if they responded reasonably to the risk, even if the harm was not averted. "Whether one puts it in terms of duty or deliberate indifference, prison officials who act reasonably cannot be found liable under the Cruel and Unusual Punishments Clause." Farmer at 844.

Having considered all the evidence in the light most favorable to the Plaintiff as this Court must do, the Court cannot conclude that Defendants acted unreasonably. In fact, the evidence establishes that when Defendants observed the assault between Plaintiff and inmate Johnson, they stood ready to use their mace, yelled an order to "stop" and whistled, presumably in an effort to signal for help. Defendants' reaction to the assault was not unreasonable.

## II. ORDER

**NOW, THEREFORE, IT IS HEREBY ORDERED** that

1) Plaintiff's Complaint is Dismissed

2) Plaintiff's Motion for Summary Judgment is DENIED; and

3) Defendants' Motion for Summary Judgment is GRANTED.

**SO ORDERED**.

Signed: November 7, 2006

Graham C. Mullen
United States District Judge